

**ORDERED in the Southern District of Florida on October 05, 2010.**

                                                              _____
                                                              Paul G. Hyman, Chief Judge
                                                              United States Bankruptcy Court

_____

```
          UNITED STATES BANKRUPTCY COURT
           SOUTHERN DISTRICT OF FLORIDA
             WEST PALM BEACH DIVISION


In re:                           CASE NO.:09-24404-BKC-PGH

CUSTOM CONTRACTORS, LLC,         Chapter 7
    Debtor.
_____/

DEBORAH C. MENOTTE, Trustee,     ADV. NO.:10-03455-PGH
    Plaintiff,

v.

UNITED STATES OF AMERICA,
    Defendant.
_____/
```

### MEMORANDUM ORDER DENYING MOTION TO DISMISS BY UNITED STATES OF AMERICA

**THIS MATTER** came before the Court for hearing on September 24, 2010, upon the United States of America's (the "Defendant" or the "IRS") Motion to Dismiss (the "Motion"), and Deborah C. Menotte's (the "Trustee") response thereto. For the reasons set forth below,

the Court herewith denies the Motion.

## BACKGROUND

Custom Contractors, LLC (the "Debtor") filed a Chapter 7 petition on July 15, 2009 (the "Petition Date"). Brian Denson ("Denson") was the principal of the Debtor. On July 29, 2010, the Trustee filed a *Complaint to Avoid and to Recover Fraudulent Transfers* (the "Complaint"), seeking to recover transfers from the Debtor to the IRS in the amount of $199,956.25 (the "Transfers"). The Trustee alleges that the Transfers were in payment of Denson's personal tax liability to the IRS, at a time when the Debtor was struggling to pay its bills, and that the Debtor never had any liability to the Defendant in any way. Counts I and III seek to recover, under 11 U.S.C. § 548, transfers that occurred within two years of the Petition Date (the "Two Year Transfers"). Counts II and IV seek to recover, under 11 U.S.C. § 544 and the Florida Uniform Fraudulent Transfer Act ("FUFTA"), transfers that occurred within four years of the petition date (the "Four Year Transfers").

## ARGUMENTS

The Defendant asserts that the doctrine of sovereign immunity deprives this Court of subject matter jurisdiction over Counts II and IV of the Complaint. The Defendant further asserts that the Court should dismiss the entire Complaint because the Trustee bears the burden of alleging and proving that the Defendant was not an

2

innocent subsequent transferee under § 550(b) of the Bankruptcy Code. The Trustee responds that under § 106 of the Bankruptcy Code, the United States abrogated sovereign immunity for actions under § 544. The Trustee also asserts that the United States was an initial, not subsequent, transferee.

## CONCLUSIONS OF LAW

### I. Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H) and (O).

### II. Standard for Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012, requires a complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007) (*abrogating Conley v. Gibson*, 355 U.S. 41 (1957)). A court "weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Twombly*, 550 U.S. at 583 n.8 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). When considering a motion to dismiss, the allegations of the complaint are accepted as true and are construed in the light most favorable to the plaintiff. *Mann v. Kendall Props. & Invs., LLC (In re AS Mgmt. Servs., Inc.)*, 2007 WL 2377082,

at *2 (Bankr. S.D. Fla. Aug. 16, 2007). This is true of both a motion to dismiss for failure to state a claim, and a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (*citing McElmurray v. Consol. Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1250 (11th Cir. 2007)).

### III. The Doctrine of Sovereign Immunity does not Deprive the Court of Subject Matter Jurisdiction

"The doctrine of sovereign immunity prevents suits against the United States except when Congress has 'unequivocally expressed' its consent to be sued." *Tolz v. United States (In re Brandon Overseas, Inc.)*, 2010 WL 2812944, *3 (Bankr. S.D. Fla. July 16, 2010) (*quoting United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992)). "Pursuant to § 106 of the Bankruptcy Code, the United States has waived sovereign immunity with respect to claims brought under certain Code sections, including § 544." *Id.* However, § 544 only empowers a trustee to avoid a transfer "that is voidable under applicable law by a creditor holding an unsecured claim[.]" § 544(b)(1). In this case, the Trustee relies on FUFTA, Florida Statutes section 726.105, *et seq*. The Defendant argues its waiver of sovereign immunity under § 106 for an action arising under § 544 is inapplicable in this case, because no creditor could bring a claim against the Defendant under FUFTA. The Defendant asserts Florida's voluntary payment rule (the "VPR") bars a

creditor from seeking a tax refund from the IRS. The Defendant further asserts that the abrogation of sovereign immunity under § 106 does not extend to a state law cause of action, such as a claim under FUFTA.

*1. The Voluntary Payment Rule does not Apply*

Florida's VPR "generally prohibits actions for refunds of taxes voluntarily paid, absent a specific statutory remedy." *Brandon Overseas, Inc.*, at *3 (citing Florida case law). However, "no statutory provision authorizing a refund is necessary for [a] taxpayer to obtain a refund where payment of an illegal tax is involuntary." *Broward County v. Mattel*, 397 So. 2d 457, 459 (Fla. 4th DCA 1981). Moreover, Florida "courts are now taking a more liberal view as to whether certain types of taxes are ever in fact voluntarily paid since the urgent and immediate payment of them is compelled in order to avoid the harsh penalties imposed for non-payment." *Id.* at 460 (recognizing that the penalty for non-payment of certain taxes creates "technical or implied duress sufficient to make the payment of such taxes involuntary" even if the taxpayer does not protest at the time of payment). More recent Florida cases indicate that the VPR does not apply to a tax paid involuntarily, or subsequently determined to be illegal.[1] *See Bill*

---

[1] Similarly, a court in this district found that the VPR did not bar a trustee's fraudulent conveyance action against the IRS under circumstances similar to the facts in this case because the transfers were involuntary. *Brandon Overseas, Inc.*, 2010 WL 2812944 at *3. That court reasoned that the transfers were involuntary in light of allegations that the transfers "(1) were not authorized by the Debtor; (2) were not made pursuant to an employment

5

*Stroop Roofing, Inc. v. Metro. Dade County*, 788 So.2d 365, 366-67 (Fla. 3d DCA 2001) (listing cases).

Relying on the Florida common law set forth above, the Defendant argues that the VPR bars the relief sought by the Trustee in this adversary proceeding. However, the Defendant cites no cases applying the VPR to a suit seeking a refund from the IRS. This distinction is significant because an action seeking a refund from the IRS "may be maintained whether or not such tax, penalty, or sum has been paid under protest or duress." 26 U.S.C. § 7422(b). In other words, a taxpayer is not precluded from seeking a refund of a tax paid to the federal government merely because the payment was voluntary. The result is no different here, where the Trustee seeks to recover a tax voluntarily paid to the IRS on a fraudulent transfer theory.

The Defendant cites one case to the contrary, *United States v. Field (In re Abatement Envtl. Res., Inc.)*, 301 B.R. 830 (D. Md. 2003), *aff'd on other grounds*, 102 Fed. Appx. 272 (4th Cir. 2004). In *Abatement*, the trustee sought to avoid payments by the Debtor to the IRS, on account of the tax liability of the Debtor's principal,

---

agreement; (3) were not deducted on the Debtor's tax returns; and (4) were made with the intent to defraud creditors." *Id*. At this time, it is not clear whether the same is true of the Transfers at issue in this case, as neither party has presented evidence on these issues. As explained below, the Court denies the Motion in this case because the VPR does not apply. However, even if the VPR did apply, the Court would nevertheless deny the Motion in order to provide the parties an opportunity to litigate whether the Transfers were voluntary. *See Ruiz v. Brink's Home Sec.*, 777 So. 2d 1062, 1064 (Fla. 2d DCA 2001) (reversing trial court's dismissal of complaint based on VPR because "the complaint [did] not show on its face the applicability of the voluntary payment doctrine," which the court described as "an affirmative defense").

6

under Maryland's Uniform Fraudulent Conveyance Act ("MUFCA").  *Id.* at 832.  The court determined that Maryland's General Assembly did not intend MUFCA to create an exception to Maryland's voluntary payment doctrine, and that the doctrine barred the trustee's suit against the IRS.  *Id.* at 835.  The court rejected the trustee's argument that the doctrine did not apply in an action against the federal government, stating that "the defense being recognized is a state law defense to a tax refund claim asserted against a taxing authority, not a defense available only to a state governmental unit.  No Maryland case suggests that this protection should be analyzed differently for a local, state, or federal governmental unit."  *Id.* at 835 n.6.  The court observed that it "would be more than mildly anomalous, to say the least, if a *state taxing authority* could take advantage of the defense but the IRS (and other federal entities with the authority to collect taxes and other 'governmental charges') could not."  *Id.* (emphasis in original).

This Court, however, discerns no anomaly in refusing to apply a doctrine conceived to preclude state tax refunds in a suit seeking to recover federal tax payments, particularly when federal law itself eschews the doctrine.  Contrary to the argument of the Defendant, this result does not violate the doctrine of intergovernmental immunity.  "[I]ntergovernmental tax immunity bar[s] only those taxes that [are] imposed directly on one

7

sovereign by the other or that discriminate[] against a sovereign or those with whom it deal[s]." *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 815 (1989). The Court's interpretation of Florida's VPR does not discriminate against the federal government, because federal law itself, rather than the State of Florida, determines the circumstances under which a taxpayer may seek a refund from the IRS. This Order merely recognizes that state law is inapplicable to expand or restrict those prerequisites. *See McCullogh v. Maryland*, 17 U.S. 316, 436 (1819) ("the states have no power, by taxation or otherwise" to "in any manner control, the operations of the constitutional laws enacted by congress"). Therefore, the Defendant's argument that the VPR bars the Trustee's action fails.

*2.    The Abrogation of Sovereign Immunity Under § 106 Extends to an Action under Section 544 Derived from State Law*

The Defendant asserts that sovereign immunity bars the Trustee's claim under § 544 because a creditor could not maintain a FUFTA claim directly against the Defendant. At least two bankruptcy courts have rejected this argument under circumstances comparable to the facts of this case. *Brandon Overseas,* 2010 WL 2812944 at *4; *Liebersohn v. IRS (In re C.F. Foods, L.P.)*, 265 B.R. 71 (Bankr. E.D. Pa. 2001). These courts reasoned that "by including § 544 in the list of Bankruptcy Code sections set forth in § 106(a), Congress knowingly included state law causes of action within the category of suits to which a sovereign immunity defense could no longer be asserted." *Brandon Overseas*, at *4 (*quoting*

*C.F. Foods*, 265 B.R. at 85).  Both courts concluded that the United State's sovereign immunity argument must fail "in light of the unambiguous language of § 106, as supported by the legislative history; the specific inclusion of § 544 in § 106; the precedent for Congress providing a trustee with rights that are greater than those possessed by the unsecured creditor upon whom a § 544 claim is based; and the policy reasons favoring recovery for the benefit of all creditors."  *Id.* (*quoting C.F. Foods*, 265 B.R. at 85).

This Court agrees with the reasoning in *Brandon Overseas* and *C.F. Foods*.  Additionally, the Court notes that the "applicable law" referenced in § 544(b) generally contemplates state law.  To require a trustee to demonstrate that the United States has waived sovereign immunity in every instance the trustee seeks to rely on state law for the purpose of § 544 would render the general abrogation of sovereign immunity under § 106 almost meaningless.  The Court finds this interpretation of § 106 untenable.  Therefore, the Defendant's sovereign immunity argument fails.

### IV. Even if the Defendant is a Subsequent Transferee, the Burden of Proof Under Section 550(b) Falls upon the Defendant

Section 550 of the Bankruptcy Code provides that an initial transferee of an avoidable transfer is strictly liable for the transfer, but precludes recovery from a subsequent transferee "that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the transfer avoided."  11 U.S.C. § 550(a) and (b).  This Court has

found that "[t]he burden of proving the elements of a 550(b)(1) defense falls upon the subsequent transferee." *Bakst v. Sawran (In re Sawran)*, 359 B.R. 348, 354 (Bankr. S.D. Fla. 2007) (*citing Kapila v. Funding, Inc. (In re Data Lease Fin. Corp.*), 176 B.R. 285, 287 (Bankr. S.D. Fla. 1994)).

The Defendant asserts that the United States is a subsequent transferee, rather than an initial transferee, a point which the Trustee disputes. The Defendant further asserts that § 550(b) sets forth the elements of a cause of action, and that the Complaint fails to state a claim upon which relief may be granted by failing to allege facts relating to those elements. The Defendant cites one Eleventh Circuit case for this proposition, *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196 (11th Cir. 1988). In that case, the Eleventh Circuit found that the defendant, a bank, was "not a transferee at all" because the defendant merely acted as a conduit, receiving funds from the debtor's bank and immediately transferring them to another. *Id.* at 1200-01. In its analysis, the court noted that the plaintiff "would have to prove that [the defendant was] a party from whom [the plaintiff could] seek recovery under section 550." In other words, a plaintiff seeking to recover under § 550 bears the initial burden of proving that the defendant is a transferee. *Id.* at 1198. The court in *Societe Generale* did not address which party bears the burden of proof under § 550(b) after the plaintiff meets that

10

initial burden.

By contrast, the court in *Data Lease Financial* squarely addressed whether the plaintiff or defendant bears the burden of proving the elements set forth in § 550. 176 B.R. at 287. In that case, the court concluded that the defendant bears "the burden of alleging and proving the § 550(b)(1) elements . . . as a potential defense" after observing that the "overwhelming weight of current authority" reached that same conclusion. *Id.* (listing numerous cases). This Court followed *Data Lease Financial* in *Sawran* and continues to agree that the defendant bears the burden of proof under § 550(b). Even accepting the Defendant's assertion that it is a subsequent transferee for the purposes of this Motion, and the Court makes no finding in this regard at this time, the Defendant still bears the burden of alleging and proving the elements of a defense under § 550(b). Therefore, the Defendant's argument that the Trustee failed to state a claim for which relief may be granted fails.

## **CONCLUSION**

Florida's VPR does not bar the Trustee's fraudulent transfer action against the IRS. Furthermore, the United State's waiver of sovereign immunity under § 106 extends to a state law cause of action, such as FUFTA. Finally, the Defendant, not the Trustee, bears the burden of alleging and proving the elements of a defense under § 550(b).

11

**ORDER**

The Court, having considered the submissions of the parties, the argument of counsel, applicable law, and being otherwise fully advised in the premises, hereby

**ORDERS AND ADJUDGES** that the Motion to Dismiss is **DENIED**.

### 

Copies to:

G. Steven Fender, Trustee's Attorney

Philip Doyle, Defendant's Attorney