Tagged Opinion



**ORDERED in the Southern District of Florida on December 5, 2011.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| In re: | CASE NO.:09-24404-BKC-PGH |
| **Custom Contractors, LLC,**<br>     Debtor.<br>_____/ | Chapter 7 |
| **Deborah C. Menotte, Trustee,**<br>     Plaintiff,<br>v.<br>**United States of America,**<br>     Defendant.<br>_____/ | ADV. NO.:10-03455-BKC-PGH |

**ORDER OVERRULING UNITED STATES' OBJECTION**

**THIS MATTER** came before the Court upon the United States of America's ("United States" or "IRS") *Objection to Bankruptcy Courts' Entry of Final Judgment in this Adversary Proceeding* ("Objection") (ECF No. 107). Pursuant to the Court's

1

*Order Setting Briefing Schedule*, Deborah C. Menotte ("Trustee") filed a Response to the IRS' Objection and the IRS filed a Reply.

## I.   *Background*

Custom Contractors, LLC (the "Debtor") filed a Chapter 7 petition on July 15, 2009. Brian Denson ("Denson") was the sole owner, manager, and officer of the Debtor. On July 29, 2010, the Trustee filed a *Complaint to Avoid and to Recover Fraudulent Transfers and Other Relief* (the "Complaint") seeking to recover allegedly fraudulent transfers from the Debtor to the IRS in the amount of $199,956.25 pursuant to 11 U.S.C. §§ 544, 548 & 550, and Fla. Stat. §§ 726.105(1)(a) & (b), 726.106(1), 726.108(1). The Trustee alleges that the transfers were in payment of Denson's personal tax liability to the IRS, at a time when the Debtor was struggling to pay its bills and had no liability to the IRS.

On September 7, 2010, after seeking and receiving an extension of time in which to file a response, counsel for the IRS filed a Motion to Dismiss Adversary Proceeding ("Motion to Dismiss") (ECF No. 7). The Motion to Dismiss argued, among other things, that because the United States did not waive its sovereign immunity for claims seeking the return of taxes that had been voluntarily paid, the Court lacked jurisdiction to determine the Trustee's claims based upon § 544 and applicable Florida law. On September 24, 2010, the Court conducted a hearing on the IRS' Motion to Dismiss and the Trustee's objection thereto. The Court denied the Motion to Dismiss, finding that Florida's voluntary payment rule did not apply to federal tax payments. The Court further found that Congress' abrogation of

sovereign immunity under § 106 extended to actions under § 544 and applicable state law. *Memorandum Order Denying Motion to Dismiss by United States of America* (ECF No. 16).

Notwithstanding the Court's *Order Denying Motion to Dismiss*, on October 19, 2010, the IRS filed its Answer which continued to assert that the Court lacked jurisdiction over claims based upon § 544(b) and Florida fraudulent transfer statutes because the United States had not waived sovereign immunity with respect to such claims. However, in its Answer, the IRS admitted the Complaint's allegation that this adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (H), and (O).

On November 12, 2010, the IRS filed a Motion for Order Requiring Joinder of a Necessary Party ("Joinder Motion") (ECF No. 26), in which it sought joinder of Denson as a necessary party to this adversary proceeding. Following a hearing on November 30, 2010, the Court entered an order denying the Joinder Motion. On April 15, 2011, the IRS filed a Motion to Continue Pretrial Conference seeking a continuance until July 2011. Having previously granted five agreed motions to continue the pretrial conference in this matter, the Court conducted a hearing on this motion which it ultimately granted. On July 5, 2011, the Trustee filed a Motion to Compel Production of Documents which was heard by the Court on July 12, 2011.

On July 5, 2011, counsel for the IRS filed a Motion for Partial Summary Judgment ("Summary Judgment Motion") (ECF No. 73), arguing that the United States was entitled to judgment as a matter of law because: 1) the payments made

to the IRS were not made with actual fraudulent intent; 2) the Debtor was not insolvent or operating with unreasonably small capital at the time of the 2007 payments; and 3) the IRS was not a transferee of the 2008 payments because the payments were refunded to Denson. As directed by the Court, the parties briefed the Summary Judgment Motion and filed a Joint Stipulation of Facts ("Joint Stipulation") (ECF No. 88). The Joint Stipulation, filed August 9, 2011, states that: 1) "[s]ubject to the continuing objection of the United States which this Court has rejected – that the Court lacks jurisdiction over Counts II and IV of the complaint because the United States has not waived sovereign immunity – the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334"; and 2) "[t]his adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (H), and (O)." The Court denied the Summary Judgment Motion based upon the existence of disputed issues of material fact.

On June 23, 2011, the Supreme Court handed down its decision in *Stern v. Marshall*, 131 S. Ct. 2594, 180 L.Ed.2d 475 (2011). In *Stern*, the Supreme Court held that bankruptcy courts lack the constitutional authority to enter a final judgment on a counterclaim that neither stemmed from the bankruptcy itself nor would necessarily be determined in the claims allowance process. *Id.* at 2611, 2620. This Court thereafter entered a generic *sua sponte Supplemental Order Setting Deadline for Objections to this Court's Entry of Final Orders in Pending Adversary Proceedings* ("Generic Sua Sponte Order") in each of more than 500 pending adversary proceedings that were before the Court. The *Generic Sua Sponte*

*Order* was entered in this case on September 8, 2011 (ECF No. 104). The United States subsequently filed its Objection to the treatment of this action as a core proceeding in which the Court has the power to issue a final judgment.

## II. *Parties' Arguments*

The IRS argues that although it admitted in its Answer that this is a core proceeding, the intervening decision in *Stern v. Marshall* limits the Court's authority to enter a final order in this fraudulent transfer action. The IRS maintains that fraudulent transfer actions derive from the common law action of *assumpsit* and only an Article III judge may enter a final order on such a claim. The IRS further argues that the resolution of this action is not required for the claims allowance process because the IRS filed no claim in this case, this action does not stem from the bankruptcy itself but instead merely seeks to augment the estate, and the limited "public rights" exception does not apply.

The Trustee maintains that the IRS waived its argument that the suit is non-core by admitting that the instant adversary proceeding was a core proceeding in its Answer, fully litigating the case, and ultimately seeking summary judgment. The Trustee further argues that this case involves no state common law claims and that the IRS is essentially trying to amend its Answer one year after filing it and long after discovery has been closed.

As discussed below, the Court finds that it has authority to enter final judgment in this matter. The Court finds that the Supreme Court's ruling in *Stern* is a narrow holding limited to the facts of that case. Furthermore, the Court finds

that the IRS, having actively litigated this action for more than a year, during which time its only objection to this Court's jurisdiction was sovereign immunity, consented to entry of final orders by this Court.

## III. *Discussion*

### A. Stern v. Marshall

Although 28 U.S.C. § 157(b)(2)(C) provided authority for bankruptcy courts to enter final orders on all counterclaims brought by the estate,[1] the *Stern* Court held that this statutory allocation of judicial power from Article III judges to Article I bankruptcy judges was unconstitutional as to "a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Stern*, 131 S.Ct. at 2608, 2620. Explaining jurisdiction in bankruptcy matters, the *Stern* Court noted, "[w]ith certain exceptions not relevant here, the district courts of the United States have 'original and exclusive jurisdiction of all cases under title 11." *Id.* at 2603 (*citing* 28 U.S.C. § 1334(a)). District courts also have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). District courts may refer, and indeed all district courts have referred, "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges of their district. 28 U.S.C. § 157(a). Under this division of labor, bankruptcy judges may hear and enter final orders in all cases under title 11, and all core proceedings "arising under title 11", or "arising in a case under title 11",

---

[1] 28 U.S.C. §157(b)(2)(C) identifies "counterclaims by the estate against persons filing claims against the estate" as core proceedings.

subject to appellate review by the district court.[2] 28 U.S.C. §§ 157(b) & 158. "When a bankruptcy judge determines that a referred 'proceeding ... is not a core proceeding but ... is otherwise related to a case under title 11,' the judge may only 'submit proposed findings of fact and conclusions of law to the district court.'" *Stern*, 131 S.Ct. at 2604 (*citing* § 157(c)(1)). "It is the district court that enters final judgment in such cases after reviewing *de novo* any matter to which a party objects." *Id*. Pursuant to 28 U.S.C. § 157(b)(3), bankruptcy judges shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding in which final orders may be entered or a proceeding that is otherwise related to a case under title 11. "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). As discussed below, the Court finds that the fraudulent conveyance claims at issue are core proceedings that arise under the Bankruptcy Code for which the Court may enter final orders.

It is incumbent upon this Court to apply *Stern's* holding recognizing, as the Supreme Court stated, that the question presented in *Stern* was a "narrow" one. *Stern*, 131 S. Ct. at 2620; *In re Safety Harbor Resort and Spa*, 455 B.R. 703, 715 (Bankr. M.D. Fla. 2011) ("The Supreme Court plainly intended to, and in fact did, narrowly limit the scope of its holding in *Stern*."). *See also In re Salander O'Reilly*

---

[2] "Matters that 'arise under' the Bankruptcy Code are those that come before the court by virtue of a provision of the Bankruptcy Code . . . Matters that 'arise in' a case under the Bankruptcy Code are those based on a right created by the Bankruptcy Code and that, by their nature, can only be brought in a case under the Bankruptcy Code." *In re Salander O'Reilly Galleries*, 453 B.R. 106, 114 (Bankr. S.D.N.Y. 2011)(*citing* Alan N. Resnick, *The Enforceability of Arbitration Clauses in Bankruptcy*, 15 Am. Bankr. Inst. L. Rev. 183, 193 (2007)).

*Galleries*, 453 B.R. 106, 115-16 (Bankr. S.D.N.Y. 2011) ("*Stern* is replete with language emphasizing that the ruling should be limited to the unique circumstances of that case, and the ruling does not remove from the bankruptcy court its jurisdiction over matters directly related to the estate that can be finally decided in connection with restructuring debtor and creditor relations[.]"); *In re Heller Ehrman LLP*, 2011 WL 4542512, *5 n.14 (Bankr. N.D. Cal. Sept. 28, 2011). The *Stern* Court did not directly address the authority of bankruptcy courts to enter final orders in fraudulent conveyance actions and explicitly intended its decision to be read narrowly. Among the many instances in which the Supreme Court indicated that its holding was a narrow one limited to the facts of the case are the following:

> [T]he debtors' claims in the cases on which she relies *were themselves federal claims under bankruptcy law*, which would be completely resolved in the bankruptcy process of allowing or disallowing claims. *Here Vickie's claim is a state law action independent of the federal bankruptcy law* and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy.

*Stern*, 131 S.Ct. at 2611 (emphasis added).

> Vickie's claim, in contrast, *is in no way derived from or dependent upon bankruptcy law*; it is a state tort action that exists without regard to any bankruptcy proceeding.

*Id.* at 2618 (emphasis added).

> Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; *the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process*.

*Id.* (emphasis added).

> We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; *we agree with the United States that the question presented here is a 'narrow' one*.

*Id.* at 2620 (emphasis added).

> We conclude today that Congress, *in one isolated respect*, exceeded [the limitations of Article III] in the Bankruptcy Act of 1984.

*Id.* (emphasis added).

It is significant that the tortious interference counterclaim at issue in *Stern*, was "a state law action independent of the federal bankruptcy law[.]" *Id.* at 2611. While *Stern* held that bankruptcy judges lacked authority to enter final judgments on state law counterclaims not necessarily resolved in the claims allowance process, it did not hold that bankruptcy judges lack authority to enter final judgments on fraudulent transfer claims or any of the other fifteen types of matters identified in § 157(b)(2)'s non-exhaustive list of core proceedings. *Safety Harbor*, 456 B.R. at 715; *In re Peacock II*, 455 B.R. 810, 812 (Bankr. M.D. Fla. 2011) ("The narrow holding in *Stern*, as just described, does not impact a bankruptcy court's ability to enter a final judgment in any other type of core proceeding authorized under 28 U.S.C. § 157(b)(2).").

In *Stern,* the Supreme Court noted that Congress' ability to bypass Article III and confer jurisdiction on Article I courts raised the question of "whether the action at issue stems from the bankruptcy itself <u>or</u> would necessarily be resolved in the claims allowance process." 131 S. Ct. at 2618 (emphasis added). The question is a disjunctive inquiry. In the case of fraudulent conveyance actions, the answer to the question - whether the action stems from the bankruptcy itself - is decidedly "yes".

9

"In point of fact, the process of garnering fraudulently-transferred assets back into the bankruptcy estate – to the resultant benefit of all creditors – is one of those proceedings which is by its very nature essential to the adjustment and restructuring of the debtor-creditor relationships that is at the core of federal bankruptcy jurisdiction." *Kelley v. JPMorgan Chase & Co.,* 2011 WL 4403289, * 6 (D. Minn. Sept. 21, 2011) (*quoting In re Wencl,* 71 B.R. 879, 882 (Bankr. D. Minn. 1987) (denying motion to withdraw the reference as premature). "[A]nother important distinction between fraudulent transfer actions and state law claims like those at issue in *Northern Pipeline*³ and *Stern*: those claims cannot exist but for the debtor's insolvency, its inability to pay debts as they become due, or its unreasonably small capital – conditions which generally result in a bankruptcy." *Hellman Ehrman,* 2011 WL 4242512 at *5 (*citing In re Mankin,* 823 F.2d 1296, 1307 n.4 (9th Cir. 1987)). While the contract suit in *Northern Pipeline* could have been brought whether or not the plaintiff was bankrupt, a fraudulent conveyance can only exist if the conveyor is insolvent or about to become insolvent, and thus is inextricably tied to the bankruptcy scheme. *Id.* "If a conveyor enjoys good financial health, a conveyance cannot harm its creditors, who would thus have no cause of action to recover [the fraudulent] transfer." *Id.* (*quoting Mankin,* 823 F.2d at 1307 n.4 (9th Cir. 1987)).

In addition, the claims asserted by the Trustee are authorized by, and arise under §§ 544(b) and 548 of the Bankruptcy Code. Such claims "may only be prosecuted by a bankruptcy trustee on behalf of a bankruptcy estate, and because a

---

³ *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982).

10

trustee and a bankruptcy estate are strictly creatures of the Bankruptcy Code, there would be no legal basis for this action were there no bankruptcy estate." *In re Bujak*, 2011 WL 5326038, *2 (Bankr. D. Idaho Nov. 3, 2011). These claims simply would not exist but for the bankruptcy. *Heller Ehrman*, 2011 WL 4542512 at *5. The analysis does not change because § 544(b) authorizes a trustee to avoid a transfer that could be recovered under state law by an actual creditor of the debtor. *Bujak*, 2011 WL 5327038 at *3. This action is not prosecuted by one of the debtor's creditors to avoid a transfer under state law, but by a bankruptcy trustee as the official representative of the bankruptcy estate to avoid prepetition transfers under the Bankruptcy Code. *Id.* Although § 544 incorporates state law to provide the "rules of decision," the claim still arises under § 544 which is a federal bankruptcy cause of action stemming from the bankruptcy itself. *In re Universal Marketing, Inc.*, 2011 WL 5553280, *3 (Bankr. E.D. Pa. Nov. 15, 2011). In addition, "[a] determination that a proceeding is not a core proceedings shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. §157(b)(3).

The *Stern* Court pointed out that the distinction in *Granfinanciera v. Nordberg*, 492 U.S. 33 (1989), "between actions that seek to 'augment the bankruptcy estate' and those that seek 'a pro rata share of the bankruptcy *res*,' reaffirms that Congress may not bypass Article III simply because a proceeding may have *some* bearing on a bankruptcy case[.]" *Stern*, 131 S.Ct. at 2618 (emphasis in original).[4] While some courts may view this language as a new limit on a bankruptcy court's authority to

---

[4] The Supreme Court then refined this distinction by asking whether the action stemmed from the bankruptcy itself or would necessarily be resolved in the claims allowance process. *Stern*, 131 S. Ct. at 2618.

finally resolve core proceedings such as fraudulent conveyance or preference actions, Judge Williamson observed in *Safety Harbor* that the *Stern* Court's use of the word "reaffirm" makes clear than nothing has changed. *Safety Harbor,* 456 B.R. at 717. Neither *Stern*, nor *Granfinanciera* hold that bankruptcy courts lack authority to enter final judgments in fraudulent transfer actions. "In fact, the Supreme Court [in *Granfinanciera*] went to great lengths to emphasize that issue was not even before it in that case." *Id.* (*citing Granfinanciera*, 492 U.S. at 64 n.19). Indeed, the "sole issue in *Granfinanciera* was whether the Seventh Amendment conferred on petitioners a right to a jury trial in the face of Congress' decision to allow a non-Article III tribunal to adjudicate the claims against them." *Id.* Judge Williamson further noted in *Safety Harbor*, that "the language from *Granfinanciera* that some courts and commentators fear may limit bankruptcy courts' jurisdiction — language relied on by the *Stern* Court — has been the law for over twenty years." *Id.* Yet, neither Judge Williamson nor this Court is "aware of a single case during the twenty years preceding *Stern* challenging a bankruptcy court's authority to enter final judgments in fraudulent conveyance actions." *Id.*

This Court's job is not to extend *Stern* to fraudulent transfer actions based on Supreme Court *dicta*, and in so doing, upend the division of labor between district and bankruptcy courts that has been in effect for nearly thirty years. *See Bujak*, 2011 WL 5326038 at *2 ("While the Supreme Court in the future may explain its decision, and could conceivably expand the reach of *Stern*'s constitutional analysis, as a bankruptcy court, this Court need not do so. Instead of attempting to predict

the future, this Court should carefully apply *Stern's* holding in its cases, and refrain from extending that holding to facts different from those in *Stern*."); *Heller Ehrman*, 2011 WL 4542512 at *6 ("After *Stern*, some courts have concluded that they cannot hear fraudulent conveyance claims as core proceedings. They are focusing on the *dicta* of Stern, not its holding. I believe that this approach thrusts unnecessary burdens on already overworked district courts, especially when bankruptcy courts have a particular expertise in and familiarity with avoidance actions."). This Court concludes that the Trustee's fraudulent transfer claims are core proceedings stemming from the bankruptcy itself for which this Court has authority to enter final orders. *Stern's* narrow holding does not apply to the claims at issue.

### B. Consent

Even if it were determined that the Court lacks authority to enter final orders because the Trustee's fraudulent transfer claims are merely "related to" the bankruptcy, § 157(c)(2) provides that a bankruptcy judge can issue final judgments in non-core proceedings if the parties consent. In this matter, the Court finds that the IRS explicitly and impliedly consented to this Court's final resolution of the claims at issue.

Specifically, the Complaint's allegation, the IRS' admission, and the IRS' stipulation[5] that this action is a core proceeding serves as the IRS' explicit consent for the Court to treat this matter as a core proceeding in which it may enter a final

---

[5] The Court notes that on August 9, 2011, well after the Supreme Court's June 23, 2011 entry of the *Stern* decision, the IRS stipulated that this fraudulent transfer action was a core proceeding. *See* Joint Stipulation of Facts filed in connection with the IRS' Motion for Partial Summary Judgment (ECF No. 88).

order. *See e.g., Mercury Cos., Inc. v. FNF Security Acquisition, Inc.*, 2011 WL 5127613, *2 (D. Colo. Oct. 31, 2011) (*citing In re C.W. Mining Co.*, 2009 WL 4906702, *2 (D. Utah Dec. 11, 2009)); *In re St. Mary's Hosp.,* 117 B.R. 125, 131 (Bankr. E.D. PA. 1990) ("An admission that a proceeding is core accords irrevocable consent to a bankruptcy court to determine the proceeding, even if it is non-core"); *In re Peacock II*, 455 B.R. at 812 ("Authority exists for the proposition that consent may be implied and that even a mistaken admission of core jurisdiction acts as consent.").

Consent can also be implied from a litigant's course of conduct. *Stern*, 131 S.Ct. at 2608. Recognizing the value of waiver and forfeiture in complex cases, the *Stern* Court concluded that if the defendant believed the Bankruptcy Court lacked authority to decide his defamation claim, he should have said so and said so promptly. *Id.* The Court further noted that "[i]n such cases, as here, the consequences of 'a litigant ... "sandbagging" the court —remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor,' — can be particularly severe." *Id.* (internal citations omitted). In this case, the IRS actively litigated this matter for more than a year. During this time the IRS filed a Motion to Dismiss in which it voiced only one objection to this Court's jurisdiction – sovereign immunity. The Court, finding the objection to be without merit, denied the Motion to Dismiss. Nearly one year after the Complaint was filed, the IRS filed a Motion for Partial Summary Judgment in which it argued that it was entitled to summary judgment based upon an argued lack of evidence

14

establishing the elements of the claims. At no time did the IRS seek to withdraw the reference from this Court to the District Court. At no time prior to the Objection did the IRS advance any argument that the claims in this action should be adjudicated by an Article III court rather than this Article I Court.[6] The IRS' course of conduct, actively litigating this proceeding for more than a year, demonstrates its implied consent to entry of final orders by this Court in this proceeding.

It should also be noted that final adjudication of non-core proceedings by consent is "a significant part of the efficiency of the bankruptcy process under which the role of the District Judge is usually that of adjudging appeals from the consensual final judgments." *In re Olde Prairie Block Owner, LLC*, 2011 WL 3792406, *6 (Bankr. N.D. Ill. Aug. 25, 2011). "Just as parties in a federal civil case often consent to final adjudication by a Magistrate Judge, *see* 28 U.S.C. § 636(c), parties may seek final adjudication of non-core proceedings by a Bankruptcy Judge in order to resolve the proceeding faster without having to wait for time on a District Judge's very busy docket." *Id.* at *7. "The Supreme Court's opinion in *Stern*

---

[6] The significance attached by counsel for the IRS to entry of the Court's *Generic Sua Sponte Order* is misplaced. The only purpose of the *Generic Sua Sponte Order*, which was entered in over 500 pending adversary proceedings, was to bring to the fore and timely determine any potential objections that might impede the efficient management of this Court's voluminous docket. The *Generic Sua Sponte* Order does not, nor was it ever intended to, speak to the merits of any objection to the entry of final orders by this Court, or create an additional opportunity for objection by a party who already consented to entry of final orders by this Court. In this case, the Court has granted at least six motions for pretrial continuances, of which the last three requests were sought by the IRS. This case with its repeated requests for continuances is the type of case in which management by the Court, and hence entry of the *Generic Sua Sponte Order*, is necessary to prevent dilatory practice. In the Court's view, it is well past time that this matter proceed to trial.

in no way altered the system of final adjudication by consent embodied in §157(c)(2)." *Id.*

> If *Stern* had destroyed the power of Bankruptcy Judges to enter final judgments by consent in non-core but otherwise related proceedings, that would have called into question the power of Magistrate Judges and other Article I judicial officers to make final adjudication by consent and thereby required a vast increased burden on the District Judges. To the contrary, it is well established "that litigants may waive their personal right to have an Article III judge preside over a civil trial." *Peretz v. United States*, 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) (*citing Schor*, 478 U.S. at 848, 106 S.Ct. 3245). This concept is not peculiar to the bankruptcy system: Magistrate Judges, who like Bankruptcy Judges are also Article I judges, can try civil matters and enter final judgments if the parties consent. 28 U.S.C. § 636(c). The constitutionality of that system has been consistently upheld.

*In re Olde Prairie Block Owner, LLC*, 2011 WL 3792406 at *8 (listing ten Circuit decisions upholding the constitutionality of Magistrate Judges entering final orders in civil proceedings by consent); *see also Sinclair v. Wainwright*, 814 F.2d 1516 (11th Cir. 1987); *In re Safey Harbor*, 456 B.R. at 718 ("Although no court has addressed the constitutionality of [§ 157(c)(2)], ten circuit courts of appeal have upheld the constitutionality of the Federal Magistrate Statute.").

As stated in *Stern,* "[i]f [the defendant] believed that the Bankruptcy Court lacked the authority to decide his claim for defamation, then he should have said so – and said so promptly." *Stern*, 131 S.Ct. at 2608. Until now, the IRS' only stated objection to this Court's jurisdiction was based upon sovereign immunity, an argument this Court rejected. Counsel for the IRS now argues in its Reply that the "Article III limitation articulated by Stern was unanticipated, and therefore, the United States cannot be said to have relinquished a known right." Implicit in this argument is counsel's apparent belief that the IRS now has a legitimate basis for its

Objection, whereas it did not have a legitimate basis for its Objection prior to *Stern*. However, the Court finds that *Stern's* narrow holding does not apply to the claims at issue. Therefore the Court will overrule the IRS' objection to entry of final orders by this Court.

## CONCLUSION

For the reasons stated above the Court finds that the Trustee's claims are core proceedings stemming from this bankruptcy for which the Court may enter final orders. Even if were to be determined that this proceeding involves non-core claims that are merely related to the bankruptcy, the Court may still enter final orders because the IRS explicitly and impliedly consented to final resolution of these claims.

## ORDER

The Court, having reviewed the submissions of the parties, the applicable law, and being otherwise fully advised in the premises, hereby **OVERRULES** the United States' Objection.

###

Copies furnished to:
Phillip Doyle, Esq.
G. Steven Fender, Esq.

Attorney Fender shall serve a copy of this Order on any interested party who does not receive electronic service.